# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RACHEL DIXON LOVE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 18-cv-4994 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| BOARD OF EDUCATION OF ) | |
| THE CITY OF CHICAGO, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rachel Dixon Love ("Plaintiff") brings suit against Defendant the Board of Education of the City of Chicago ("Defendant") for employment discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Americans with Disabilities Act ("ADA"). Before the Court is Defendant's motion to dismiss Plaintiff's amended complaint for failure to state a claim [47]. For the following reasons, the Court denies Defendant's motion [47]. This case is set for status hearing on February 4, 2020 at 9:00 a.m.

I.  **Background**

The following facts are taken from the governing amended complaint [43] and assumed to be true for purposes of Defendant's motion to dismiss. Plaintiff is a fifty-nine-year-old African American female who was formerly employed by Defendant. Her most recent position was teacher at Arthur Ashe Elementary School in Chicago, Illinois ("Arthur Ashe"). Plaintiff alleges that when she began working at Arthur Ashe in August 2016, she "was almost immediately subjected to a hostile work environment" by another teacher at the school, Maria Walls. [43] at 3. Walls is an African American female around the same age or slightly older than Plaintiff. According to the

complaint, Walls "made numerous disparaging and inappropriate age-related comments to Plaintiff," including but not limited to, "[c]an you take your old ass down the stairs, you left your jacket there" and "Is that a bologna sandwich you are eating, you are so old-fashioned." *Id*. The complaint also alleges that during a teacher's meeting in Plaintiff's classroom, and in the presence of the school's assistant principal, Dr. Jackson, Walls said, "Don't you smell something, it smells old in here." *Id*. Walls also told Plaintiff on one occasion, "Hey Mrs. Hard of Hearing. What is wrong with you, you are so slow." *Id*. at 4.

Walls also allegedly made numerous comments to Plaintiff concerning her race and color. For instance, on numerous occasions, "Walls referred to Plaintiff by the name 'Celie' which was the main character from the movie The Color Purple and who was considered slow and stupid." [43] at 3. Plaintiff found the nickname to be very offensive. On other occasions, "Walls referred to Plaintiff as Boo-Boo, a small bear from Yogi Bear," which Plaintiff took to "insinuate[] that she was a follower and not a leader." *Id*. at 4. This comment was allegedly made many times in front of Plaintiff's students and caused Plaintiff's students to make fun of her and call her Boo-Boo, as well.

In October 2016, Plaintiff complained to Dr. Jackson about Walls' comments. Dr. Jackson told Plaintiff that he did not "have time for your petty conversations with Ms. Walls" and did not offer to investigate the matter. [43] at 4. In November 2016, Plaintiff tried to set up a meeting with Dr. Jackson to discuss her concerns over the hostile work environment, but he did not respond. Later that month, he told her that she was "such a headache for me" and asked "are you stuck in Alzheimer's time?" *Id*.

During her time at Arthur Ashe, Plaintiff was unable to carry heavy items due to having two torn rotator cuffs and a hairline fracture. Plaintiff alleges that she received these injuries in

2015 while working in another school, and that she had requested and received light work accommodation at the prior school. When Plaintiff was transferred to Arthur Ashe, the school knew or should have known from Plaintiff's file that Plaintiff was disabled and continued to require light duty accommodation. Plaintiff also told Dr. Jackson that she was unable to carry heavy items due to her disability. Nonetheless, on multiple occasions, Plaintiff was told to carry heavy boxes of paper from the copy room upstairs to her classroom. Plaintiff asked for help because of her torn rotator cuffs, but Dr. Jackson told Plaintiff that she would not be getting help and had to carry the boxes herself.

The complaint alleges that "Plaintiff was also disabled in that she had two partial amputations on fingers above the knuckle of her left hand." [43] at 5. Although Plaintiff was generally able to hide the amputations, Walls noticed them in October 2016 and told other staff members. "Within a week thereafter, Plaintiff was told by Dr. Jackson that, 'we didn't know you couldn't adequately teach the class.'" *Id.* "After Plaintiff used hand signals for numbers, Plaintiff was then transferred to teach the lowest level students that needed a 1 on 1 teacher." *Id.*

During a Halloween event at Arthur Ashe, it was Plaintiff's responsibility to escort a small number of students from the classroom out of the school building where certain holiday activities were to take place. Some of the students did not have Halloween costumes so Plaintiff decided to take parts of her costume off and give them to some of the students to use as their costumes. During that process, Plaintiff cut her finger, which caused it to bleed heavily. Plaintiff asked another teacher, Mr. Thompson, to watch the students while she went to the bathroom to clean the cut. Mr. Thompson agreed to watch the students. When Plaintiff returned from tending her injury, she was confronted by a school administrator who accused Plaintiff of abandoning her students. Plaintiff denied the allegation and explained her need for medical attention. Nonetheless, Plaintiff was

3

ordered to sign a letter admitting that she neglected the students. When Plaintiff refused, she was threatened, "This [termination] is going to happen one way or the other." [43] at 6. Plaintiff signed the letter and was then terminated and escorted out of the building. Plaintiff alleges on information and belief that a "Do not hire" note was placed in her file, preventing her from getting a new job with any school in the Chicago Public School system. *Id.*

Finally, Plaintiff alleges that Defendant was required but failed to pay her for "her first week of teaching in which she was required to attend training sessions." [43] at 10.

Plaintiff attaches to the Amended Complaint a copy of the Charge of Discrimination she filed with the Illinois Department of Human Rights on December 14, 2016. See [43-1]. On the charge, Plaintiff has checked boxes indicating that her complaint relates to discrimination on the basis of color, retaliation, age, and disability. The charge asserts that during her employment, Plaintiff was subjected to different terms and conditions of employment, including lack of support and extra scrutiny, that she was harassed and complained to Defendant to no avail, and that she was discharged. The charge states that Plaintiff believes she was discriminated against because of her age, color (light complexion), in retaliation, and because of her disability.

On December 21, 2016, Plaintiff was issued a Notice of Right to Sue from the EEOC. According to the complaint, Plaintiff never received the letter and requested a replacement in June 2018. On June 18, 2018, Plaintiff received an EEOC Right to Sue letter for the first time.

Plaintiff's amended complaint contains claims for age discrimination/hostile work environment (Count I); disability discrimination (Count II); discrimination on the basis of color (Count III); retaliation (Count IV); and violation of the Illinois Wage and Payment and Collect Act (Count V). Plaintiff seeks compensatory damages, costs, expenses, and attorneys' fees.

Currently before the Court is Defendant's motion to dismiss for failure to state a claim.

## II. Legal Standard

Defendant moves to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss under Rule 12(b)(6), plaintiff's complaint must allege facts which, when taken as true, 'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). The Court "accept[s] all well-pleaded facts as true and draw all reasonable inferences in plaintiff's favor." *Id.* at 600 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

This case involves claims of employment discrimination. The pleading requirement for such claims "is minimal." *Clark v. Law Office of Terrence Kennedy, Jr.*, 709 Fed. Appx. 826, 828 (7th Cir. 2017). Typically, "A plaintiff need only identify the type of discrimination, when it occurred, and by whom." *Id.*; see also *Tate v. SCR Medical Transp.*, 809 F.3d 343, 346 (7th Cir. 2015); *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084–85 (7th Cir. 2008).

## III. Analysis

### A. Age Discrimination/Hostile Work Environment Based on Age

The Age Discrimination in Employment Act of 1967 ("ADEA") protects workers who are 40 years of age and older from age-based employment discrimination. *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 367 (7th Cir. 2019). The ADEA claim set forth in Plaintiff's amended complaint is styled as both a discrimination claim and a hostile work environment claim. See [43] at 6, ¶ 32. "To prevail on an age-discrimination claim, the plaintiff must prove that his

age was the 'but-for' cause of the challenged job action." *Wrolstad v. Cuna Mutual Ins. Soc.*, 911 F.3d 450, 454 (7th Cir. 2018). "[T]he Seventh Circuit 'has assumed, but never decided, that plaintiffs may bring hostile environment claims under the ADEA.'" *Kawczynski v. F.E. Moran, Inc.*, 238 F. Supp. 3d 1076, 1085–86 (N.D. Ill. 2017) (quoting *Racicot v. Wal–Mart Stores, Inc.*, 414 F.3d 675, 678 (7th Cir. 2005)). "Workplace harassment that is sufficiently severe or pervasive to alter the terms of employment is actionable as a hostile work environment claim." *Id.* at 1086. The ADEA is violated "when 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or persuasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.*

Defendant argues that Plaintiff's ADEA claim should be dismissed because Plaintiff does not allege that any of Walls' comments were made because of Plaintiff's age and, therefore, the nexus between the comments and age is pure speculation.

Plaintiff's allegations are sufficient to survive dismissal. Plaintiff alleges that "[w]ithin the first month working at [Arthur Ashe], Walls made numerous disparaging and inappropriate age-related comments to Plaintiff," including but not limited to three specific examples. [43] at 3. While Plaintiff may not have alleged specifically that Walls made the comments *because* of Plaintiff's age, that is obviously implied. Defendant compares this case to *Winchester v. Allison Transmission/GMC*, 2006 WL 2450331 (S.D. Ind. Aug. 22, 2006), in which the court granted summary judgment to an employer on an employee's ADEA hostile work environment claim. The court concluded there that the employee had "not offered evidence that would allow a reasonable jury to find that, were it not for his age he would not have been the victim of co-worker harassment," where the evidence consisted of a few stray comments from his co-workers and the plaintiff acknowledged that his problems with the co-workers began when he complained to

6

management about the co-workers playing radios. *Id*. at *8. *Winchester* is of limited value here because this case is at the pleading stage, where Plaintiff is required only to "identify the type of discrimination, when it occurred, and by whom." *Clark*, 709 Fed. Appx. at 828.

Defendant also argues that the ADEA claim should be dismissed because Plaintiff does not allege facts showing that the complained-of conduct was severe or pervasive. Instead, according to Defendant, Walls' age-related comments were "simple teasing." [47] at 5.

Defendant is not entitled to dismissal on this basis. The three age-related comments that Defendant describes as "simple teasing" are only some of the "numerous" age-related insults Plaintiff claims to have been subjected to by Walls. Further, Plaintiff also alleges that Dr. Jackson, the school's vice principal, made an age-related comment about Plaintiff being "stuck in Alzheimer's time." [43] at 4. For these reasons, the motion to dismiss Plaintiff's ADEA claims is denied. Perhaps further discovery and context will strengthen or weaken Plaintiff's claims; if the latter, then Defendant can renew its arguments in a motion for summary judgment.

B.     **Disability Discrimination**

The Americans with Disabilities Act ("ADA") prohibits employers from discriminating against their employees "on the basis of disability. 42 U.S.C. § 12112(a). "To establish a violation of the ADA, an employee must show '1) that she is disabled; 2) that she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and 3) that the employer took an adverse job action against her because of her disability.'" *Arroyo v. Volvo Group North America, LLC*, 805 F.3d 278, 286 (7th Cir. 2015) (quoting *Winsley v. Cook Cty.*, 563 F.3d 598, 603 (7th Cir. 2009)).

Defendant argues that Plaintiff's ADA claim must be dismissed because Plaintiff does not allege that she is disabled or has a disability, as defined by the ADA. Specifically, Defendant

7

contends that Plaintiff failed to allege that either the 2015 injury to her rotator cuffs or the two partial amputations on her fingers are impairments that have limited at least one of her major life activities.

Under the ADA, "disability" is defined as "a) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment." *Miller v. Ill. Dep't of Transp.*, 643 F.3d 190, 195 (7th Cir. 2011) (citing 42 U.S.C. § 12102(2)). "Notably, the ADA was amended in 2008 to make the standard for qualifying as disabled more inclusive." *Bob–Maunuel v. Chipotle Mexican Grill, Inc.*, 10 F. Supp. 3d 854, 881 (N.D. Ill. 2014) (citing ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110–325, 122 Stat. 3553 (eff. Jan. 1, 2009)). "Following the 2008 amendments to the ADA, the term "substantially limits" is to be construed broadly in favor of expansive coverage." *Id*. (citing 29 C.F.R. § 1630.2(j)(1)(i)).

Applying this standard, the Court concludes that Plaintiff has sufficiently alleged two disabilities. First, Plaintiff alleges that due to her torn rotator cuffs, she is unable to lift heavy items. Lifting is one of the "major life activities" expressly included in the ADA's definition of that term. See 42 U.S.C. § 12102(2)(A); see also *Bob–Maunuel*, 10 F. Supp. 3d at 881 (recognizing lifting as a major life activity); *Ehlerding v. Am. Mattress & Upholstery, Inc.*, 208 F. Supp. 3d 944, 949 (N.D. Ind. 2016) (same). Although in "pre–ADAAA cases, the Seventh Circuit held that lifting restrictions were not substantial limitations," *Bob-Maunuel*, 10 F. Supp. 3d at 881 (citing *Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 555 (7th Cir. 2011)), "[t]he Seventh Circuit has not addressed the issue of whether lifting restrictions are substantial limitations under the standard outlined in the ADAAA." *Id*. In at least two district court cases, however, plaintiffs have been allowed to proceed on claims that a lifting restriction is a substantial limitation under the

8

standard outlined in the ADAAA. See *id.* at 869, 881 (concluding that "Plaintiff's hernia constituted a disability that substantially limited the major life activity of lifting" where Plaintiff's doctor restricted his lifting to no more than ten pounds); *Heatherly v. Portillo's Hot Dogs, Inc.*, 958 F. Supp. 2d 913, 921 (N.D. Ill. 2013) (concluding that plaintiff "presented sufficient evidence to create a triable issue of fact as to whether her high risk pregnancy rendered her disabled under the ADAAA" where plaintiff's "nurse testified that [a] medical note that stated [plaintiff] should only engage in 'light duty' meant that [plaintiff] should refrain from 'heavy lifting'").

Second, Plaintiff alleges sufficient facts to state a claim that Defendant regarded her as disabled due to the two partial amputations of her fingers. According to the complaint, when Dr. Jackson became aware of Plaintiff's amputations, he told her "we didn't know you couldn't adequately teach the class" and, "[a]fter Plaintiff used hand signals for numbers," she was "transferred to teach the lowest level students that needed a 1 on 1 teacher," and subsequently terminated. [43] at 5-6; see also *Freeman v. Metro. Water Reclam. Dist. of Greater Chicago*, 927 F.3d 961, 965 (7th Cir. 2019) (concluding that district court erred by dismissing ADA claim based on plaintiff's failure to allege that his alcoholism substantially limited a major life activity, where he alleged facts indicating that defendant regarded him as disabled due to his alcoholism).

Defendant also argues that Plaintiff's ADA claim should be dismissed because Plaintiff's transfer to teach students one-on-one is not an adverse employment action, as her salary and benefits were not affected by the transfer. Plaintiff responds that her ADA claim is not based on her transfer, but rather on her termination. Defendant disputes this, contending that the complaint does not allege that she was fired because of her partially amputated fingers.

The complaint is worded broadly enough to include a claim that Defendant terminated her because of her alleged disabilities, including her inability to lift and amputated fingers. Plaintiff

9

alleges broadly that Defendant "failed to comply with [its] statutory duty to take all reasonable and necessary steps to eliminate discrimination from the workplace" and that "[a]s a direct and proximate result of Defendant' discrimination against Plaintiff, she has suffered and will continue to suffer damage including loss of wages and benefits, liquidated damages, front pay, pain and suffering, and extreme and severe mental anguish and emotional distress." [43] at 7-8.

Finally, Defendant moves to dismiss Plaintiff's ADA claim on the basis that a failure to accommodate claim is outside the scope of the EEOC charge, which says only that Plaintiff was discriminated against because of her disability. Plaintiff responds that she should be held to a less stringent standard than the Court typically applies because when she filed the charge, she was acting pro se and did not know the difference between a failure to accommodate and disparate treatment.

The Court finds it unnecessary to consider the viability of a failure to accommodate claim because Plaintiff's amended complaint does not allege such a claim. See [43] at 7-8. To the extent Plaintiff wants to pursue such a claim, she must seek permission to file a second amended complaint.

### C. Discrimination on the Basis of Color

"To state a claim for discrimination under Title VII, a plaintiff must only allege that his employer instituted an adverse employment action against him on the basis of his protected status." *McDaniel v. Progress Rail Locomotive, Inc*., 940 F.3d 360, 367–68 (7th Cir. 2019).

Defendant moves to dismiss Plaintiff's claim for discrimination on the basis of color because Plaintiff has not alleged (1) that the Board treated a similarly-situated employee outside of her protected class more favorably; or (2) that Plaintiff was meeting Defendant's legitimate expectations.

As *McDaniel* indicates, such allegations are not required to state a claim under Title VII. That is because "the pleading standards in Title VII cases are different from the evidentiary burden a plaintiff must subsequently meet when using the method of indirect proof under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Luevano*, 722 F.3d at 1028. To prevail on a claim using the *McDonnell Douglas* burden-shifting framework, a plaintiff must come forward with evidence that (1) she is a member of a protected class, (2) she was meeting the defendant's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees who were not members of her protected class were treated more favorably. *McDaniel*, 940 F.3d at 368. The Supreme Court has made clear that "under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the *McDonnell Douglas* framework does not apply in every employment discrimination case." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002). "For instance, if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case." *Id.*; see also *Sailsbery v. Village of Sauk Village*, 2016 WL 4701446, at *3 (N.D. Ill. Sept. 8, 2016) ("there is no requirement at the motion to dismiss stage that a plaintiff plead a similarly situated comparator sufficient to meet the prima facie case outlined by *McDonnell Douglas*"). For this reason, the motion to dismiss Plaintiff's Title VII claim is denied.

D.  **Retaliation**

Plaintiff's retaliation claim is based on the allegation that "Defendant retaliated against Plaintiff's complaints of age and color discrimination by using a pretextual termination," and therefore arises under both the ADEA and Title VII. [43] at 9. To state a claim for retaliation under either statute, a plaintiff must allege that she engaged in statutorily protected activity and suffered an adverse employment action as a result of that activity. See *Clark*, 709 Fed. Appx. at

11

829 (ADEA); *Alamo v. Bliss*, 864 F.3d 541, 555 (7th Cir. 2017) (Title VII).

Defendant argues that, to the extent Plaintiff's retaliation claim is based on the ADEA, it must be dismissed because she failed to exhaust her administrative remedies by including the claim in her EEOC charge. Rather, Defendant maintains, "Plaintiff charged that she believed that she had "been discriminated against because of her age, 57, in violation of the Age Discrimination of Employment Act of 1967" and "[t]he only retaliation claim Plaintiff charged was in violation of Title VII." [47] at 11.

Plaintiff responds that her charge should be liberally construed because she was acting pro se when she filed it. Plaintiff also asserts that even if the charge does not specifically allege an ADEA retaliation claim, she is still entitled to bring the claim because "Plaintiff's complaint alleges that the same individuals were involved in the discrimination and the same conduct, that being Plaintiff's termination after making complaints to her supervisor, Dr. Jackson." [58] at 7. Defendant disagrees, contending that Plaintiff's ADEA retaliation claim does not involve the same conduct as her ADEA discrimination claim because "Plaintiff has alleged in her EEOC Charge and Amended Complaint that the Board terminated her because she is 57 years old" and the charge does not "contain any facts supporting a claim that she was terminated after she complained about age discrimination." [63] at 6.

A plaintiff may not bring a claim for discrimination under the ADEA in federal court without first filing a charge before the EEOC. *Ajayi v. Aramark Bus. Servs., Inc.,* 336 F.3d 520, 527 (7th Cir. 2003); see also 29 U.S.C. § 626(d). In turn, the claims alleged in the plaintiff's complaint must be "like or reasonably related to the EEOC charges" and "reasonably ... expected to grow out of an EEOC investigation of the charge." *Peters v. Renaissance Hotel Operating Co.,* 307 F.3d 535, 550 (7th Cir.2002) (quoting *Harper v. Godfrey Co.,* 45 F.3d 143, 148 (7th

12

Cir.1995)). Claims are deemed reasonably related if there is a factual relationship between them. *Cheek v. W. & S. Life Ins. Co.,* 31 F.3d 497, 501 (7th Cir.1994). "This means that the EEOC charge and the complaint must, at minimum, describe the *same conduct* and implicate the *same individuals*." *Id.* (emphasis in original). The purpose of this rule is to "afford[ ] the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion ... and [give] the employer some warning of the conduct about which the employee is aggrieved." *Id.* (citation omitted).

Applying this standard, the Court concludes that Plaintiff's ADEA charge is like or reasonably like the Title VII retaliation claim that is expressly alleged in the charge. See [43-1] at 1 ("I believe that I have been discriminated against because of my color, light complexion, and in retaliation, in violation of Title VII of the Civil Rights Act of 1964"). Because Plaintiff was not represented by an attorney when she filed her EEOC charge, we construe the charge liberally. See *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1005 n.3 (7th Cir. 2019). Plaintiff's Title VII retaliation claim and the ADEA retaliation claim involve the same individuals—Walls and Jackson—and the same conduct, Walls' alleged harassment of Plaintiff (which Plaintiff alleges was based on both her age and color) and Dr. Jackson's decision to terminate Plaintiff after she complained about Walls' harassment and the hostile work environment that it created. Both claims also involve a discrete period of time, beginning in August 2016 when Plaintiff began working at Arthur Ashe, and ending in October 2016 when she was terminated. An investigation into the Title VII retaliation charge could reasonably be expected to reveal the ADEA retaliation charge. Further, Plaintiff checks the "retaliation" box on the form, which does not specify between retaliation claims based on Title VII versus other employment discrimination statutes. Finally, Defendant is incorrect that the Charge says that Defendant "terminated [Plaintiff] because she is 57 years old."

[63] at 6. The Charge does not identify a single basis for Plaintiff's firing; instead, it says: "I was harassed. I complained to [Defendant] to no avail. Subsequently, I was discharged." [43-1]. If these factual allegations are sufficient to support a Title VII retaliation claim—a point that Defendant does not challenge—the Court fails to see how they are not also sufficient to support an ADEA retaliation claim.

Finally, Defendant argues that Plaintiff's retaliation claim must be dismissed because Plaintiff does not allege that she engaged in statutorily protected activity. According to Defendant, "Plaintiff's complaint to Dr. Jackson was not statutorily protected activity because the comments Plaintiff complained to Dr. Jackson about did not refer to Plaintiff's color or her age or any discrimination based on her color or age." [47] at 12. A quick review of the amended complaint belies this argument. The amended complaint alleges that Walls made numerous disparaging comments concerning Plaintiff's age and color and provides several examples, see [43] at 3-4, ¶¶ 11-14. It then alleges that in October 2016, "Plaintiff went to assistant principal Dr. Jackson to complain about all the age-related comments and color/race comments made by Walls." [43] at 4, ¶ 15. For these reasons, Defendant's motion to dismiss the retaliation claim is denied.

### E. Illinois Wage Payment and Collection Act

To successfully plead a violation of the Act, Plaintiff must allege that: (1) Defendant was an "employer" as defined in the Wage Payment Act; (2) the parties entered into an "employment contract or agreement"; and (3) Plaintiff was due "final compensation." *Catania v. Local 4250/5050 of Communications Workers of America*, 834 N.E.2d 966, 972 (Ill. App. 2005).

Defendant argues that Plaintiff's claim under the Wage Payment Act must be dismissed because she fails to plead facts showing mutual assent to pay Plaintiff for training sessions. Plaintiff responds that any "mutual assert" element is satisfied by ¶ 10 of her complaint, which

states: "Plaintiff was hired by Defendant on or around August 2016. Her most recent position was Teacher at Arthur Ashe[.]" [43] at 3. The Court agrees that it is not unreasonable to infer from these allegations that when Defendant hired Plaintiff, the parties mutually agreed that Plaintiff would be paid for her work, including training she completed in order to do her job. Therefore, Defendant's motion to dismiss the Illinois Wage Payment and Collection Act claim is denied.[1]

**IV.    Conclusion**

For the reasons explained above, Defendant's motion to dismiss [] is denied. This case is set for status hearing on February 4, 2020 at 9:00 a.m.

Dated: January 16, 2020

Robert M. Dow, Jr.
United States District Judge

---

[1] In a footnote to its motion to dismiss, Defendant contends that Plaintiff's complaint should be dismissed because she failed to sue within 90 days of receipt of the EEOC's original Notice of Right to Sue letter. See [47] at 1, n.1. However, Plaintiff alleges that she never received the original letter and had to request a copy. According to the complaint, Plaintiff filed suit within 90 days of receipt of the replacement letter. The Court must take these well-pled allegations as true at this stage of the case, and Defendant's undeveloped argument cites no authority indicating that dismissal is appropriate assuming the truth of Plaintiff's claim about the lost letter.